**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
GOVERNMENT EMPLOYEES INSURANCE :
COMPANY, et al., :
: 22-cv-10531 (OTW)
Plaintiffs, :
: **OPINION & ORDER**
-against- :
:
SUKDEB DATTA, M.D. et al., :
:
Defendants. :
:
---------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**I.   INTRODUCTION**

On December 12, 2022, Plaintiffs brought this action pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, alleging, *inter alia*, that Defendants orchestrated a fraudulent and unlawful scheme by submitting fraudulent no-fault insurance charges. (ECF 1). The operative Complaint names nine Defendants: Sukdeb Datta, M.D. ("Datta"), Datta Endoscopic Surgery & Pain Center, L.L.C. ("Datta Endoscopic"), Garden State Neuro Stimulation, L.L.C. ("Garden State Neuro"), Saddle Brook Anesthesia Associates, L.L.C. ("Saddle Brook Anesthesia"), and Surgistar Holdings, L.L.C. d/b/a Saddle Brook Endoscopic & Orthopedic Surgery Center ("Saddle Brook ASC") (together, the "Datta Defendants"); Gabriel Dassa, D.O., ("Dassa"), and Dassa Orthopedic Medical Services, P.C. ("Dassa Ortho") (together, the "Dassa Defendants"); and Darrin Kaloz, D.C. ("Kaloz"), and Adjust For Life Chiropractic, P.C. ("Adjust for Life") (together, the "Kaloz Defendants"). (ECF 1). Plaintiffs have alleged, *inter alia*,

that all Defendants engaged in a no-fault insurance fraud scheme and submitted fraudulent bills to Plaintiffs. (ECF 1).

Plaintiffs now seek leave to file an Amended Complaint (the "PAC"), which would join Skazka, LLC ("Skazka"), its owner, Sergey Denevich ("Denevich"), and its associate, Arthur Kostanian ("Kostanian") (together, the "Skazka Entities"), as defendants in the action, and allege new facts regarding Defendants' unlawful professional practice structures and unlawful fee-splitting with unlicensed parties. (ECF 130 at 16).

For the following reasons, Plaintiffs' motion is **GRANTED**. Plaintiffs are directed to file their Amended Complaint by **March 25, 2025**.

## II.    BACKGROUND

### A.    Relevant Factual History

The Court assumes familiarity with this case and briefly summarizes the relevant facts here.

Plaintiffs allege that they received thousands of fraudulent insurance bills for medical services that Defendants unnecessarily provided to patients insured under Plaintiffs' no-fault insurance policies and New York's No-Fault law. (ECF 1 at ¶¶ 1–2). Plaintiffs allege that, beginning in 2014, Defendants orchestrated a large-scale, fraudulent, and unlawful scheme by submitting unlawful insurance charges to Plaintiffs. (ECF 1 at ¶ 37). Under this scheme, Defendants falsely billed initial examinations to Plaintiffs by misrepresenting their patients' presenting problems as moderate to highly severe, when in fact they were not. (*See, e.g.*, ECF 1 at ¶¶ 77–110). Defendants would then submit bills for examinations, tests, and other medical

services that could be reimbursed at higher rates despite the patients' issues not warranting such services. (*See* ECF 1 at ¶¶ 77–110).

Additionally, Plaintiffs claim that Defendants engaged in improper referral arrangements to generate fraudulent billing, (*see generally* ECF 1 at ¶¶ 37–61), including, in the case of the Datta Defendants, self-referrals (ECF 1 at ¶¶ 5, 277–300). Plaintiffs further allege that Defendants entered secret arrangements to exchange patient referrals in return for unlawful compensation disguised as office lease payments and reciprocal medical referrals. (ECF 1 at ¶¶ 43–50). Plaintiffs allege that, under these arrangements, Defendants provided unnecessary and fraudulent medical services to patients, while inflating insurance claims to Plaintiffs. (*See generally* ECF 1 at ¶¶ 62–71).

B. **Relevant Procedural History**

Plaintiffs filed their Complaint on December 13, 2022. (ECF 1). The Dassa Defendants and Kaloz Defendants filed their respective Answers on February 10, 2023. (ECF Nos. 21, 23). On April 27, 2023, the Datta Defendants moved to dismiss the claims against them, (ECF 34), which motion the Court denied without prejudice, (ECF 75), and which the Datta Defendants resubmitted on July 26, 2024 (ECF 81).[1] On November 27, 2023, the Court so ordered the parties' Rule 26(f) Report, setting the deadline to file any motion to amend or join additional parties as April 25, 2024. (ECF 48 at ¶ 6). The deadline was later extended to May 23, 2024. (ECF

---

[1] On June 19, 2024, the Court denied the Datta Defendants' first motion to dismiss, without prejudice, in light of the parties' report that "active" and "material settlement discussions" were then ongoing. (ECF 75). The case did not settle. (*See* ECF 81 at 1). On July 26, 2024, the Datta Defendants resubmitted the same motion to dismiss, which is now fully briefed, and remains pending. (ECF 81).

66). This matter was referred to me for general pretrial management on July 26, 2024 (ECF 84), and on October 4, 2024, the parties consented to my jurisdiction for all purposes (ECF 104).

Between June and August 2024, Plaintiffs deposed Defendants Adjust for Life, Garden State Neuro, and Dassa Ortho. (ECF 130 at 9). At those depositions, Plaintiffs learned that Defendants had made "verbal" (*i.e.*, oral) agreements with the Skazka Entities to pay Skazka more than what the written agreements required, and, based on that testimony, deposed Skazka and Denevich in August 2024. (ECF 130 at 9–10). Following those depositions, on August 23, 2024, Plaintiffs served a subpoena on TD Bank, N.A., seeking further financial information regarding Skazka specifically. (ECF Nos. 92-1, 130 at 10). Following an in-person status conference before this Court on October 1, 2024,[2] at which the Skazka Entities were directed to and did appear, (ECF 97), the Skazka Entities ultimately consented to production from TD Bank (*see* ECF Nos. 62, 102, 103). Plaintiffs received the production on December 4, 2024. (ECF 130 at 11).

On January 9, 2025, Plaintiffs indicated that they might seek to amend the Complaint. (ECF 121). After I directed the parties to meet and confer, (ECF 122), the Dassa and Kaloz Defendants consented to Plaintiffs' proposed amendment, but the Datta Defendants intended to oppose it (*see* ECF 123).

Accordingly, on January 29, 2025, Plaintiffs filed the instant motion for leave to amend (ECF Nos. 128, 129, 130), attaching the PAC for the Court's review under seal, which document

---

[2] At the October 1 Conference, the parties also discussed their intent to consent to my jurisdiction. (ECF 105 at 3:9–4:2). (*See also* ECF Nos. 95 (dated September 9, 2024), 101 (dated October 1)). Judge Rearden signed the parties' AO 85 Form on October 4, 2024, and the matter was thus referred to me for all proceedings. (ECF 104).

was subsequently re-filed on the public docket at ECF 132.[3] The Datta Defendants filed an opposition on January 31, 2025. (ECF 133). Plaintiffs replied on February 5, 2025. (ECF 134). The Skazka Entities, who have been involved in the ongoing discovery since August 2024, and have appeared before the Court, (*see* ECF 97), have not responded to Plaintiffs' motion (*see* Docket).[4]

### C. The Proposed Amended Complaint

The operative Complaint (ECF 1) asserts 27 causes of action against the nine Defendants for: violations of the RICO Act (Causes of Action 2, 7, 12, 17, 21, 24); conspiracy to violate the RICO Act (Causes of Action 3, 8, 13, 18, 25); common law fraud (Causes of Action 4, 9, 14, 19, 22, 26); aiding and abetting fraud (Causes of Action 5, 10, 15); unjust enrichment (Causes of Action 6, 11, 16, 20, 23, 27); and a declaratory judgment that Adjust for Life, Datta Endoscopic, Garden State Neuro, Saddle Brook Anesthesia, Saddle Brook ASC, and Dassa Ortho have no right to receive payment for any pending bills submitted to Plaintiffs (Cause of Action 1). A chart outlining Plaintiffs' claims is annexed to this Opinion as Ex. A. (Chart of Causes of Action).

The primary purpose of Plaintiffs' PAC is to join the Skazka Entities. (*See generally* ECF 130). The PAC asserts substantially the same allegations as the operative Complaint, (ECF 1), but also adds new, specific, factual allegations that the Skazka Entities had unlawful relationships with Defendants, and were, therefore, part of the fraudulent scheme. (ECF 134 at

---

[3] Plaintiffs moved to file the PAC under seal on January 22, 2025. (ECF 126). On January 28, 2025, the Court denied the motion and ordered Plaintiffs to refile the PAC and redline with redactions applied pursuant to Fed. R. Civ. P. 5.2(a) only (ECF 131). The PAC contains no redactions. (*See* ECF 132).

[4] The Datta Defendants represent that counsel for the Skazka Entities have represented to them that they are unlikely to consent to Magistrate Judge jurisdiction if the Plaintiffs' motion to amend were to be granted. (ECF Nos. 123, 133 at 15). The Skazka Entities have made no such representations to the Court, including at the October 2024 Conference. (*See generally* ECF 105).

5–7). It also: (1) includes new allegations that Dassa Ortho, Adjust for Life, Garden State Neuro, Datta Endoscopic, and Saddle Brook Anesthesia unlawfully obtained Personal Injury Protection benefits reimbursement for services performed by independent contractors (ECF 132-1 at ¶¶ 346–47); and (2) provides additional details regarding Saddle Brook ASC's regulatory citations (ECF 132-1 at ¶ 343).

**1. The RICO Claims (Causes of Action 2, 3, 7, 8, 12, 13)**

As relevant here, Plaintiffs now allege that the Skazka Entities violated the RICO Act, under 18 U.S.C. § 1962(c), by: holding ownership interests in and controlling the operations of Adjust for Life, Dassa Ortho, and Garden State Neuro, (together, the "RICO Entities"); unlawfully splitting professional fees generated by the RICO Entities; and receiving unlawful compensation from Kaloz and Adjust for Life, Dassa and Dassa Ortho, and Datta and Garden State Neuro (together, the "RICO Defendants"). (ECF 132-1 at ¶¶ 365, 400, 437 (Causes of Action 2, 7, 12)).

The PAC alleges that the Skazka Entities recruited Kaloz, Dassa, and Datta, who were licensed physicians and chiropractors, to enter an agreement under which the Skazka Entities received ownership and control interests in the RICO Entities, split professional fees, and submitted fraudulent no-fault insurance billing to Plaintiffs. (ECF 132-1 at ¶¶ 57–60). In exchange, the Skazka Entities would provide compensation and patient referrals from their "multidisciplinary" clinics. (ECF 132-1 at ¶ 61). These written agreements called upon the RICO Defendants to pay Skazka for both management and marketing services, and lease of the facility space. (ECF 132-1 at ¶ 65). The agreed-upon prices were not linked to the RICO Entities' business or income, or the fair market value of the lease and services. (ECF 132-1 at ¶ 65). The PAC further alleges that the RICO Defendants paid Skazka more than the fees required by the

written agreements (*see, e.g.*, ECF 132-1 at ¶¶ 68–70), and that the Skazka Entities used only a fraction of the unlawful compensation received under these agreements for anything related to marketing or management services (ECF 132-1 at ¶ 71). Through this fraudulent scheme, the Skazka Entities controlled the RICO Entities' practices, accounts receivable, and any revenue generated. (ECF 132-1 at ¶¶ 67, 72).

Plaintiffs also allege that the Skazka Entities conspired with the RICO Defendants, in violation of 18 U.S.C. § 1962(d) to violate the RICO Act. (ECF 132-1 at ¶¶ 372, 407–08, 444–45 (Causes of Action 3, 8, 13)). Specifically, the PAC alleges that the Skazka Entities and the RICO Defendants thereby caused the RICO Entities to operate out of "multidisciplinary" clinics controlled by the Skazka Entities. (ECF 132-1 at ¶ 61). The Skazka Entities referred patients—who presented with minor or no injuries from their automobile accidents—from the "multidisciplinary" clinics to be referred to, and between, the RICO Entities, which would then submit fraudulent bills to Plaintiffs. (ECF 132-1 at ¶ 63).

**2. Aiding and Abetting Fraud (Causes of Action 5, 10, 15)**

The Plaintiffs also now allege that, in furtherance of the fraudulent scheme, the RICO Defendants knowingly referred patients to, and among, the RICO Entities for medically unnecessary services in exchange for unlawful compensation. (ECF 132-1 at ¶¶ 385–86). The referrals allowed the RICO Entities to continue submitting fraudulent bills to Plaintiffs despite a lack of advertising and marketing efforts. (*See, e.g.*, ECF 132-1 at ¶¶ 76–77). To support the fraudulent bills, the RICO Defendants generated false treatment reports that recommended continued treatment at another RICO Entity. (ECF 132-1 at ¶ 386). Specifically, the PAC alleges that Dassa Ortho and Dassa generated false treatment reports to support continued treatment

by Adjust for Life (a Kaloz Defendant), (ECF 132-1 at ¶ 386), and makes identical allegations against Adjust for Life, Garden State Neuro, Kaloz, and Datta for aiding and abetting Dassa Ortho's (a Dassa Defendant) fraudulent scheme (ECF 132-1 at ¶ 423), and Dassa Ortho and Dassa for aiding and abetting Garden State Neuro's (a Datta Defendant) fraudulent scheme (ECF 132-1 at ¶ 460).

### 3. Unjust Enrichment (Causes of Action 6, 11, 16)

Relatedly, the PAC alleges that the Skazka Entities were unjustly enriched at Plaintiffs' expense, through their participation in the fraudulent scheme with the RICO Defendants. (ECF 132-1 at ¶¶ 397, 434, 471).

### 4. Common Law Fraud (Causes of Action 4, 9, 14)

Finally, Plaintiffs now assert independent claims against the Skazka Entities under a theory of common law fraud, alleging that the Skazka Entities intentionally and knowingly made false and fraudulent statements of material fact to Plaintiffs. (ECF 132-1 at ¶¶ 379, 415–17, 452–54). The PAC alleges that the Skazka Entities concealed their ownership and control interests in the RICO Entities through management, marketing, and lease agreements, and then secretly received profits generated by submitting fraudulent bills to Plaintiffs. (ECF 132-1 at ¶ 66).

## III. DISCUSSION

Generally, Fed. R. Civ. P. 15(a) applies to amendments made before a scheduling order's deadline to amend,[5] while Fed. R. Civ. P. 16(b) comes into play when parties seek to amend

---

[5] Under Rule 15(a)(2), the Court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). *See Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 401 U.S. 321, 330 (1971). This is a liberal and permissive standard. *Sacerdote v. New York U.*, 9 F.4th 95, 115 (2d Cir. 2021). A Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the

after a deadline to do so has expired. The Court must balance the more liberal standard of Rule 15(a) against the requirements of Rule 16(b). *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). Under Rule 16(b)(4), the schedule "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). *See Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000) (holding that despite the lenient standard of Rule 15(a), a district court may deny leave to amend under Rule 16(b) if the movant fails to show good cause). Under the good cause standard, the moving party must show that, despite having exercised diligence, they could not have reasonably met the applicable deadline. *See Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003); *Parker*, 204 F.3d at 340.

Because Plaintiffs moved to amend after the May 23, 2024 deadline, the good cause standard under Rule 16(b) applies. (*See* ECF 48 at ¶ 6). For the following reasons, I find that Plaintiffs have met their burden and shown that good cause exists to amend their Complaint under Rule 16(b).

A. **Plaintiffs Have Exercised Diligence in Seeking Amendment.**

Plaintiffs timely moved to amend the Complaint after obtaining evidence to support joining the Skazka Entities. Plaintiffs' counsel could not have met the May 23, 2024, amendment deadline because they did not obtain the information that supported joining the Skazka Entities until after receiving critical discovery in December 2024. Discovery did not commence until November 27, 2023, and Defendants' initial disclosures were evasive and incomplete, thus concealing their relationships with the Skazka Entities. (ECF 134 at 7). It was

---

amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603–04 (citing *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)). *See also Sacerdote*, 9 F.4th at 115.

not until the 30(b)(6) depositions in the summer of 2024 that Plaintiffs first uncovered inconsistencies in Defendants' prior discovery responses regarding their relationship with the Skazka Entities. (ECF 134 at 5). At their depositions, the Dassa Defendants testified that Denevich and Kostanian—Skazka's owner and associate, respectively—were not legitimate, licensed practitioners and that the Skazka Entities controlled patient referrals at their clinics. (ECF 132-1 at ¶ 64). This testimony contradicted Defendants' prior representations that the Skazka Entities were independent entities with no involvement in the fraudulent conduct alleged in the Complaint. (*See* ECF 130 at 3–5). Moreover, it was not until Plaintiffs received the fruits of the TD Bank Subpoena—in December 2024, a year after discovery had commenced—that Plaintiffs uncovered large transactions between Skazka and the RICO Defendants indicating that the Skazka Entities were involved in the alleged RICO scheme. (ECF 130 at 9).

The Datta Defendants' assertion that Plaintiffs could and should have added Skazka before the May 23, 2024, deadline is also without merit. (*See* ECF 133 at 13–14). The Datta Defendants argue that the Kaloz Defendants produced contracts, checks, and other transaction information between the Kaloz Defendants and Skazka in their January 2024 document production that Plaintiffs could and should have acted on if they intended to bring claims against Skazka. (ECF 133 at 13). But the Kaloz Defendants' bank records recorded transactions with Skazka reflecting only minimal differences between the payment price and the agreed-upon contract price, (ECF 134 at 12–13), and, without more, Plaintiffs determined that they could not plead claims against Skazka with the particularity required under Rule 9(b).[6] In

---

[6] The Datta Defendants assert that Plaintiffs "had notice of" the Skazka Entities' involvement with the fraudulent scheme because Plaintiffs were in possession of the checks and contracts between the Kaloz Defendants and the Skazka Entities early in discovery, and that Plaintiffs therefore should have searched

10

contrast, the corporate bank records produced in third-party discovery in December 2024 reflected that: (1) the RICO Entities collectively paid the Skazka Entities more than $10,600,000 between 2015 to 2022 (ECF 132-1 at ¶ 69); (2) payments frequently exceeded the amounts set forth in the written agreements and were often issued as multiple large checks on the same or closely proximate dates (ECF 132-1 at ¶ 70); and (3) only a small fraction of the funds received from the RICO Defendants was actually spent on office space leases or anything that could reasonably be considered "marketing" or "management" services (ECF 132-1 at ¶ 71). Therefore, I find that Plaintiffs have shown diligence to support good cause for amendment.

### B. Permitting Amendment Will Not Unduly Prejudice Defendants.

The Datta Defendants have not shown that permitting amendment would be unduly prejudicial. When assessing whether a proposed amendment is unduly prejudicial, courts consider whether the assertion of the new claim or defense would: (1) require the non-movant to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the dispute's resolution; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (citing *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993)). A court is "most

---

PACER to find other litigation connecting the Defendants. (ECF 133 at 13–14). But, as Plaintiffs rightly point out (ECF 134 at 7, 10), these early document productions and depositions may not, without more, have provided a sufficient basis to amend the Complaint because Plaintiffs would not have been able to plead facts with the particularity Rule 9 requires. Fed. R. Civ. P. 9(b); *Esplanade 2018 Partners, LLC v. Mt. Hawley Insurance Company*, 23CV3592 (DEH), 2025 WL 307401, at *3 (S.D.N.Y. Jan. 27, 2025) ("[The movant] has demonstrated good cause for leave to amend. [Defendant] did not know, nor could it have known sufficient facts to allege fraud prior to the deadline [for seeking leave to amend pleadings], especially considering the heightened pleading standard for fraud claims. Rule 9(b)."). *See also* Fed. R. Civ. P. 11.

hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim." *Id.*

These factors all favor granting, rather than denying, amendment. As to the first, the Skazka Entities have already been thoroughly involved in discovery in this action for seven months. (*See supra* § II.B). As to the third, Plaintiffs seek to assert claims against the Skazka Entities based on the very same facts underlying the fraudulent and unlawful conduct they allege against the current Defendants in the operative Complaint. (*See supra* § II.C). As to the second, the sole *potential* delay that the Datta Defendants identify is that joining the Skazka Entities could *theoretically* delay the resolution of the case if the Skazka Entities refuse to consent to magistrate judge jurisdiction, and that the case's *hypothetical* transfer—back to Judge Rearden—could thus delay or halt the parties' progress in discovery. (ECF 133 at 15). This may happen, but it is also possible that Judge Rearden would move the case as quickly as, or even more quickly than she had before the parties consented to my jurisdiction. (*See* ECF 75). These concerns are mere conjecture: it is not at all certain that joining the Skazka Entities will significantly disrupt the case timeline. (ECF 133 at 15). The Datta Defendants thus provide no compelling reason to deny amendment.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend their Complaint is **GRANTED**. Plaintiffs are directed to file their Amended Complaint by **March 25, 2025**.

SO ORDERED.

Dated: March 19, 2025  
New York, New York

*/s/ Ona T. Wang*  
**Ona T. Wang**  
United States Magistrate Judge